# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **JOSHUA HUTCHASON and BRIAN OSBURN,** | |
| | CIVIL ACTION NO.: 5:17-cv-113-D |
| **Plaintiffs,** | |
| v. | |
| **LOWRY LAND CO., INC.,** | |
| **Defendant.** | |

### PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF THE SETTLEMENT AGREEMENTS AND ATTORNEYS' FEES AND COSTS AND MEMORANDUM OF LAW IN SUPPORT

**I.  INTRODUCTION**

This wage and hour lawsuit against Defendant Lowry Land Co., Inc. ("Defendant" or "Lowry Land") has been settled, and Plaintiffs Joshua Hutchason and Brian Osburn ("Plaintiffs") respectfully submit their Unopposed Motion for Approval of the Settlement Agreements. As discussed herein, the proposed settlement is fair and reasonable and warrants this Court's approval.

This case alleges that Lowry Land has a policy and practice of failing to pay its Imagers any overtime compensation, in violation of the federal Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"). Lowry Land denies all of the allegations in the lawsuit. After the Complaint was filed, the Parties agreed to an Alternative Dispute Resolution ("ADR") process, during which they exchanged substantial informal discovery, and engaged in extensive arm's-length settlement negotiations. After considerable

negotiations, the Parties were able to reach a settlement of this matter. *See* Declaration of Sarah R. Schalman-Bergen ("Schalman-Bergen Decl.") (attached as Exhibit 1) ¶ 8. The terms of the Parties' settlement are set forth in a Settlement Agreements (the "Agreements") (attached as Exhibit 2).

Upon the Court granting final approval, Plaintiff Hutchason will receive ▇▇▇ and Plaintiff Osburn will receive ▇▇▇ *Id.* at ¶ 1(b). In exchange, the Settlement Agreements contain a release of all claims by Plaintiffs against Lowry Land, and all of their past and present parent companies, investors in any of these companies, owners, controlling persons, subsidiaries, affiliates, shareholders, directors, officers, employees, insurers, reinsurers, attorneys and agents, which arise under the FLSA, all state law common law claims, and all claims under any state minimum wage laws, state wage payment and collection laws, state overtime statutes, state common law and unjust enrichment, based on the factual allegations in the Complaints, whether known or unknown, through the date of the Settlement Agreements. *Id.* at ¶ 4.

Plaintiffs' counsel believes that the negotiated Settlement Agreements provide an excellent settlement for Plaintiffs with respect to their claims for allegedly unpaid wages and overtime arising from Lowry Land's alleged improper wage and hour practices at issue in this case, especially when taking into consideration the possibility that the litigation, if not settled now, might not result in any recovery or might result in a recovery less favorable. *See* Schalman-Bergen Decl. ¶ 10. Plaintiffs respectfully submit that this motion should be granted because the proposed Settlement Agreements satisfy all of the criteria for approval under federal law and falls well within the range of reasonableness.

Accordingly, Plaintiffs request that the Court issue an order: 1) granting approval of the proposed Settlement Agreements; and 2) attorneys' fees in the amount of ▮▮▮▮▮▮▮▮▮▮ and costs in the amount of ▮▮▮▮▮▮▮▮▮▮; and (3) dismiss Plaintiffs' claims with prejudice. Lowry Land does not oppose this Motion.

## II.     PROCEDURAL HISTORY

On February 3, 2017, Plaintiff Joshua Hutchason filed this action alleging that Lowry Land has a policy and practice of misclassifying imagers as independent contractors and not paying them overtime compensation. (Dkt. No. 1.) Plaintiff Hutchason filed a First Amended Complaint on April 17, 2017. (Dkt. No. 19.) On June 8, 2017, Lowry Land filed an Answer to Plaintiff's First Amended Complaint denying Plaintiff's allegations and asserting numerous defenses thereto. (Dkt. No. 23.) Plaintiff Osburn opted into this matter on March 13, 2017. (Dkt. No. 14.)

On August 31, 2017, the Parties submitted a Joint Motion to Stay the Case in order to engage in alternative dispute resolution (Dkt. No. 26), and on September 1, 2017, the Court approved the motion and stayed the case. (Dkt. No. 27). The most recent stay was granted until June 22, 2018. (Dkt. No. 47.)

In connection with the ADR process, the Parties agreed to informal discovery so that they could engage in meaningful, good faith and informed settlement discussions. Specifically, Lowry Land agreed to produce and did produce al available records of hours worked and all forms of compensation received by Plaintiffs. Based on the data provided by Defendant, Plaintiffs provided a settlement demand on September 29, 2017. *See*

Schalman-Bergen Decl. ¶¶ 6-7.

The Parties engaged in settlement negotiations in the following months. *Id.* at ¶ 8. As a result of the extensive arm's-length negotiations between the Parties, the Parties have agreed to settle the Action in accord with the terms of the Settlement Agreements. To avoid incurring additional cost in the Litigation and without admitting or conceding any liability or damages whatsoever, Defendant agreed to settle the Litigation on the terms and conditions set forth in the Settlement Agreements.

As part of the Settlement Agreements, the Parties agreed to Plaintiffs filing their Second Amended Complaint ("SAC") on behalf of Plaintiffs only for their individual FLSA claims. (Dkt. No. 47.) Plaintiffs filed their SAC on June 15, 2018. (Dkt. No. 48.)

The Parties now present the Settlement Agreements to the Court for its approval. The Settlements offer significant advantages over the continued prosecution of this case: Plaintiffs will receive significant financial compensation and will avoid the risks inherent in the continued prosecution of this case in which Defendant would assert various defenses to its liability. Schalman-Bergen Decl. ¶ 9.

### III.  THE TERMS OF THE SETTLEMENT AGREEMENT

Pursuant to the Agreements, Lowry Land will provide the settlement checks to Plaintiffs' counsel within twenty (20) days of the Effective Date. Agreements ¶ 1(d). The Settlement Awards includes: (1) awards to Plaintiffs; (2) the payment of attorneys' fees, which will compensate Plaintiffs' Counsel for all work performed in the litigation as of the date of the Settlement Agreements plus all work remaining to be performed, including but not limited to, documenting the Settlements, securing Court approval of the Settlements,

and obtaining final dismissal of the Action; (3) the payment of out-of-pocket costs incurred by Plaintiffs' Counsel.

> In exchange for the Settlement benefits, Plaintiffs shall release:
>
> Lowry, any current or former subsidiary, parent company, affiliated entity, related entity, successor, assign, or division of Lowry, and any current or former officer, director, trustee, agent, employee, shareholder, representative, advisor, insurer, or attorney of Lowry, from any and all claims that were or could have been brought in the above-captioned matter based on the factual allegations in the Complaint, whether known or unknown, through the date of this Agreement. This release includes all Fair Labor Standards Act claims, all state law common law claims, and all claims under any state minimum wage laws, state wage payment and collection laws, state overtime statutes, state common law and unjust enrichment, based on the factual allegations in the Complaints, whether known or unknown, through the date of through the date of [these Agreements].

Agreements ¶ 4.

## IV. DISCUSSION

Plaintiffs respectfully request that the Court enter the accompanying proposed order approving the Settlements. Lowry Land does not oppose this Motion.

### A. Applicable Legal Standard

#### 1. Legal Standard for Approval of FLSA Settlements

The standard for approval of an action arising under the FLSA requires only a determination the proposed settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Pliego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117, 127-125 (D. Colo. 2016) (citing *Lynn's Food Stores. Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982)). To approve a FLSA settlement, the Court must determine whether: (1) the litigation involves a *bona fide* dispute; (2) the proposed settlement is fair and equitable

5

to all parties; and (3) any enhancement payments are fair and reasonable. *Swartz v. D-J Eng'g, Inc.*, No. 12-CV-01029-DDC-KGG, 2016 WL 633872, at *3 (D. Kan. Feb. 17, 2016) (citing *Tommey v. Comput. Sci. Corp.*, No. 11–CV–02214–EFM, 2015 WL 1623025, at *2 (D. Kan. Apr. 13, 2015); *Barbosa v. Nat'l Beef Packing Co.*, No. 12-2311-KHV, 2015 WL 4920292, at *3 (D. Kan. Aug. 18, 2015)).

In addition, the proposed Settlements meet the standard for approval of an FLSA settlement because it is a fair and reasonable compromise of a *bona fide* dispute that furthers the purpose of the FLSA. As such, there are no grounds to doubt the reasonableness of the Settlement.

**B.     The Terms Of The Proposed Settlement Are Fair And Reasonable Resolving A *Bona Fide* Dispute**

Here, the proposed Settlements meet the standard for approval under the FLSA. To approve the settlement agreement, the Court must find that (1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties concerned, and (3) the proposed settlement contains a reasonable award of attorneys' fees. *Baker v. Vail Resorts Mgmt. Co.*, No. 13–cv–01649–PAB–CBS, 2014 WL 700096, at *1 (D. Colo. Feb. 24, 2014) (citing *Lynn's Food Stores*, 679 F.2d at 1354).

**1.     A *Bona Fide* Dispute Existed Between The Parties**

Under *Lynn's Food Stores*, a district court may find that a proposed settlement agreement resolves a *bona fide* dispute when it "reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute." 679 F.2d at 1354. "To meet this obligation, the parties must present: (1) a description of

the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage." *Baker*, 2014 WL 700096 at *1 (citing *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 718 (E.D. La. 2008)).

In the SAC, Plaintiffs alleged Defendant's compensation practices of misclassifying Plaintiffs as independent contractors and paying them a set day rate without taking into account the number of hours actually worked during a workweek or paying overtime compensation for all hours worked over forty. SAC. ¶¶ 14-29. Defendant denies the allegations and contends that Plaintiffs were properly classified and, even assuming they were misclassified, they never worked more than 40 hours in a workweek.

During the course of their extensive settlement negotiations, the Parties exchanged data regarding both Plaintiffs. In addition to disagreeing on whether additional overtime was owed under the FLSA, Lowry Land also asserted that, even if Plaintiffs prevailed on liability, Plaintiffs would not be able to demonstrate that the violation was a "knowing violation," such that Plaintiffs would only be able to recover under a two-year FLSA statute of limitations. *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Ultimately, the Settlements that the Parties reached reflect what Plaintiffs' counsel believes to be a fair and reasonable settlement of disputed claims that takes into account the risks that Plaintiffs would face if the case proceeded in litigation.

### 2. The Proposed Settlement Is Fair And Reasonable

Because the Tenth Circuit has not definitively set out FLSA specific criteria to use when assessing the fairness and reasonableness of a proposed settlement agreement, district courts have looked to the same factors used in evaluating the fairness of class action settlements under Fed. R. Civ. P. 23. *See Baker*, 2014 WL 700096 at *2 (citing *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002)). These factors are: 1) whether the parties fairly and honestly negotiated the settlement; 2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; 3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted litigation; and 4) the judgment of the parties that the settlement is fair and reasonable. *Id.* Once the settlement is found to be fair and reasonable, the Court also determines whether the agreement furthers the purpose of the FLSA. *See Solis v. Top Brass, Inc.*, No. 14-cv-00219-KMT, 2014 WL 4357486, at *3 (D. Colo. Sept. 3, 2014) ("To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employee and must not frustrate the FLSA policy rationales."); *Swartz*, 2016 WL 633872 at *4; *Baker*, 2014 WL 700096 at *2.

The Settlement Awards provide Plaintiffs with the recovery of alleged unpaid overtime hours worked, and were carefully negotiated based on a substantial investigation by Plaintiffs' Counsel, and the review and analysis of documents produced by Lowry Land in preparation for settlement negotiations. *See* Schalman-Bergen Decl. ¶ 11. The Settlement Awards are negotiated amounts that fall between Defendant's calculated potential exposure and Plaintiffs' calculated potential damages. *Id*.

### C.   The Proposed Settlement Furthers The Purpose Of The FLSA

Finally, the Settlement Agreements contain no provisions that would be contrary to the purposes of the FLSA or frustrate the implementation of the FLSA in the workplace. Indeed, the settlements further the purposes of the FLSA by providing Plaintiffs with substantial recovery for their alleged unpaid overtime, that they may have otherwise been unable to recover. *See* 29 U.S.C. § 202 (congressional finding and declaration of policy); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945) ("The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency...."). Because the settlement facilitates the FLSA and is a fair and reasonable resolution of a *bona fide* dispute, it should be approved as reasonable.

### D.   The Request For Attorneys' Fees And Costs Should Be Approved

#### 1.   The Fee Shifting Provision Of The FLSA Provides For The Award Of Attorneys' Fees

Plaintiffs in an FLSA case may recover their attorneys' fees and expenses under the statute's fee-shifting provision. *See* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or Plaintiff, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); *Gambrell v. Weber Carpet, Inc.*, No. 10-2131-KHV, 2012 WL 5306273, at *3 (D. Kan. Oct. 29, 2012) (award of attorney's fees under Section 216(b) of the FLSA is mandatory) (citing *Wright v. U–Let–Us Skycap Servs., Inc.*, 648 F. Supp. 1216, 1218 (D. Colo. 1986)).

Negotiated fees are preferred because it prevents attorneys' fees from becoming "a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of a fee."). Courts therefore have "a responsibility to encourage agreement" on fees where possible. *Blum v. Stenson*, 465 U.S. 886, 902 n.19 (1984). Here, as part of the negotiations that led to the Settlement, Defendant agreed not to object to a total award of ▌▌▌▌ for attorneys' fees and costs. Schalman-Bergen Decl. ¶ 26.

Plaintiffs' Counsel agreed to represent Plaintiffs on a contingency fee basis. *See id.* ¶ 20. Courts have recognized the importance of such arrangements, noting that many workers "cannot afford to retain counsel at fixed hourly rates . . . yet they are willing to pay a portion of any recovery they may receive in return for successful representation." *Wells v. Sullivan*, 907 F.2d 367, 371 (2d Cir. 1990). Thus, "contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation . . . and transfer a significant portion of the risk of loss to the attorneys taking a case." *In re Abrams*, 605 F.3d 238, 245-46 (4th Cir. 2010). "Access to the courts would be difficult to achieve without compensating attorneys for that risk." *Id.*

In this case, Plaintiffs' counsel would not have recovered any of their fees and out-of-pocket costs had they not obtained a settlement or prevailed at trial. *See* Schalman-Bergen Decl. ¶ 20. This factor thus weighs in favor of the requested fees because Plaintiffs' Counsel assumed significant risk of nonpayment when they agreed to represent Plaintiffs on a contingency fee basis. *See In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1143, 1151 (D. Colo. May 27, 2009) ("A contingent fee . . . is designed to reward

10

counsel for taking the risk of prosecuting a case without payment during the litigation, and the risk that the litigation may be unsuccessful.")  By permitting clients to obtain attorneys without having to pay hourly fees, this system provides critical access to the courts for people who otherwise would not be able to find competent counsel to represent them.  The risks Plaintiffs' counsel undertook were real, and the resources that Plaintiffs' Counsel dedicated to this action meant that such resources were not available to other cases.  Plaintiffs' counsel's contingency risk, together with the excellent result that has been achieved on behalf of the Plaintiffs, supports the requested fees and costs.

### 2.     Any Time Limitations Imposed By The Client Or Circumstances

The FLSA provides a maximum three-year statute of limitations on claims. *See* 29 U.S.C. § 255(a).  The statute of limitations for the FLSA claims of potential opt-in plaintiffs is not tolled by the filing of a plaintiff's complaint, but rather by the opt-in plaintiff filing his/her written consent with the court. *See Stransky v. HealthONE of Denver, Inc.,* 868 F. Supp. 2d 1178, 1181-82 (D. Colo. 2012).  In this case, Plaintiffs' Counsel filed Plaintiff Hutchason's original Complaint on February 3, 2017, thereby ceasing the running of his statute of limitations, but not of the potential opt-in plaintiffs and of Plaintiff Osburn.  Plaintiff Osburn's ceased the running of his statute of limitations when he filed his Opt-In Consent Form.

### 3.     Amount Involved And Results Obtained

Here, the Settlement Awards represent a significant recovery on behalf the Plaintiffs in light of some risks. For instance, Defendant was prepared to argue that imagers, such as Plaintiffs, are exempt from the overtime requirements of the FLSA. Among other things,

Defendant also disputed the average number of hours worked by Plaintiffs. Defendant contended Plaintiffs work records proved neither Plaintiffs ever worked more than 40 hours in a workweek.

Furthermore, the Settlement Awards are negotiated amounts that fall between Defendant's calculated potential exposure and Plaintiffs' calculated potential damages. *See* Schalman-Bergen Decl. ¶ 11. As determined by Defendant's personnel and payroll records, the Settlement Awards are based on an examination of each Plaintiffs' workweeks when they worked for Defendant during the relevant time period. *Id.*

In sum, the Settlement Awards represent an excellent result given the circumstances of the case, and thus, the "amount involved and results obtained" factor supports the proposed fee award.

### 4. Reduced Fee Requested

Plaintiffs' Counsel's requested attorneys' fees of total ▇▇▇ was negotiated between the Parties. Plaintiffs' Counsel's actual fees are ▇▇▇, resulting in a multiplier of ▇. Plaintiffs' Counsel reduced their fees in order to maximize Plaintiffs' settlement awards and resolve this lawsuit without the need of further litigation. *See id.* at ¶ 21.

### 5. Experience, Reputation And Ability Of The Attorneys

As is described in detail in Plaintiffs' Counsel's declaration, Plaintiffs' Counsel focus their practices on, and have extensive experience in, representing workers in wage and hour litigation nationwide. *See id.* at ¶¶ 2-4, Ex. A. Counsel have shown their ability by achieving the excellent result obtained for the Plaintiffs in this case. The experience,

12

reputation and ability of Plaintiffs' Counsel, therefore, supports the requested fee award.

### E. Plaintiffs' Counsel's Costs Should Be Approved

In addition to being entitled to reasonable attorneys' fees, the FLSA provides for the reimbursement of costs. *See* 29 U.S.C. § 216(b). Here, Plaintiffs' Counsel's negotiated costs to ▌▌▌▌, which covers current costs and expected costs through settlement distribution. *Id.* at ¶ 25.

Plaintiffs' Counsel's costs include reasonable out-of-pocket expenditures. "Under the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document productions, consulting with experts and consultants, travel and other litigation-related expenses." *In re Cardizem CD Antitrust Litig.*, 210 F.R.D. 508, 535 (E.D. Mich. 2003). *See also Oh v. AT&T Corp.*, 225 F.R.D. 142, 154 (D.N.J. 2004) (finding expenses such as "(1) travel and lodging, (2) local meetings and transportation, (3) depositions, (4) photocopies, (5) messengers and express service, (6) telephone and fax, (7) Lexis/Westlaw legal research, (8) filing, court and witness fees, (9) overtime and temp work, (10) postage, (11) the cost of hiring a mediator, and (12) NJ Client Protection Fund *pro hac vice*." to be reasonable).

The expenses incurred in this litigation to date are described in the accompanying declaration. *See* Schalman-Bergen Decl. ¶ 23. The expenses are of the type typically billed by attorneys to paying clients in the marketplace and include such costs as mediation fees, court costs, copying fees, delivery costs (including costs for printing and sending claim forms to Settlement class members), and computerized legal research.

All of these expenses were reasonable and necessary for the successful prosecution of this case, and pursuant to the terms of the Settlement Agreements, Defendant does not object to the request for costs.

## V.     CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court issue an order: (1) approving the settlement as a fair, adequate, and reasonable; (2) incorporating the terms of the Settlement Agreements; (3) approving Plaintiffs' Counsel's fees and costs; and (4) dismissing Plaintiffs' claims with prejudice against Defendant.

Dated:  June 29, 2018                                          Respectfully submitted,

BERGER & MONTAGUE, P.C.

/s/ Sarah R. Schalman-Bergen
Shanon J. Carson
Sarah R. Schalman-Bergen
Camille Fundora
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA  19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
scarson@bm.net
sschalman-bergen@bm.net
cfundora@bm.net

Steven T. Horton
Horton Law Firm
114 NW 6th Street, Ste. 201
Oklahoma City, Oklahoma 73102
Telephone:  (405) 606-8080
Facsimile:  (405) 606-8088
shorton@coxinet.net

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing has been filed on the ECF docket and is available for viewing and download on this 29th day of June, 2018.

s/ Sarah R. Schalman-Bergen
Sarah R. Schalman-Bergen
